# Mulliken *versus* Graham.

1. In ejectment by Graham on an equitable title against Mulliken, who claimed under conveyance from Graham's vendor; a memorandum of a sale to Graham was admissible as evidence of his title without proof of notice of it to Mulliken.

2. It was not necessary that Mulliken should have notice of the identical paper to make it evidence; it was part of Graham's evidence of his equitable title.

3. Vague reports of strangers or information by one not interested will not affect a purchaser with notice.

4. A purchaser will be affected by information derived from a person interested and from a source likely to gain credit, although not the party or his agent.

6. Evidence in this case to affect a purchaser with notice of an equitable title.

[Mulliken *v.* Graham.]

February 28th 1871. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ. Read, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 258, to January Term 1870.

This was an action of ejectment, brought February 19th 1868, by Charles H. Graham against Charles Mulliken, to recover possession of a house in Mount Vernon street, Philadelphia, with notice of claim for mesne profits.

The parties both claimed under Upton S. Newcomer.

On the 1st of July 1862, The Franklin Fire Insurance Company conveyed the Ephrata Springs to Newcomer. Graham alleged that subsequently by arrangement with Newcomer he became the owner of one-half the Springs; that afterwards he sold his interest in that property to Captain John Fredericks and received in part payment the premises in dispute. He entered into possession of the Mount Vernon street house by a tenant, but had received no deed for either that or the Springs property.

The Mount Vernon street property, instead of being conveyed to Graham, was conveyed to Newcomer, and afterwards by him to Mulliken, the defendant. Graham's tenant having left the property and it being unoccupied, Mulliken broke and entered into it. This suit was brought to recover the possession.

The questions in the case were—whether Graham had an equitable title to the Mount Vernon street house, and whether Mulliken was a bonâ fide purchaser without notice of Graham's title.

The cause was tried May 14th 1869, before Thayer, J.

Graham testified that the Springs property being for sale for $15,000, Newcomer, in June 1862, asked him to raise $3000 for the cash payment. He did so, and paid it to the Franklin Fire Insurance Company, the owners. He afterwards, at Newcomer's request, bought the furniture for about $7000, from the executors of Konigmacher, who had occupied the property, Graham in consideration to have a half interest in the property. He gave the notes of Weaver & Graham for the money, and paid them when due. Newcomer opened the house at the Springs in 1862, and paid Graham $1000 as profits of that year. The business not being so good the next year, he proposed to sell his interest to Newcomer for $13,000. To this Newcomer assented, but could not raise the first payment. A negotiation was afterwards entered into with Captain Fredericks for the interest of both Graham and Newcomer, and Fredericks agreed to give $30,000 if Graham would take in payment for his interest the property in dispute at $5500, other property at $2000, and $7500. cash. To this Graham assented, and a memorandum of the contract was drawn up by Graham's book-keeper. He directed Mr. Fitler, a conveyancer, to draw the deeds. Fredericks sent the key of the property in dispute to Graham, who took possession June 21st 1864. He lost possession by Mulliken breaking into the house.

[Mulliken *v.* Graham.]

He testified further that the transaction between them not being concluded on July 1st 1864, the time appointed, he authorized Newcomer to settle with Fredericks.   Newcomer afterwards informed him that he had settled with Fredericks and had spent all Graham's money.   Graham caused Newcomer to be indicted, and at his trial in the Quarter Sessions, Mulliken was present under subpœna by the prosecution.   The memorandum of the agreement with Fredericks was read at that trial.

On cross-examination he said that he did not refuse to ratify the agreement after he got possession; never refused to take the other property he had agreed to take.   Mr. Fitler said he was to deliver the deed upon Graham surrendering all the papers.   Graham had made no arrangement to surrender the papers.   When he advanced the money for the Springs property and furniture he took a judgment-bond to the firm of Weaver & Graham, of which he was a member, to secure himself.

Williams, the book-keeper of Graham, testified that he made the memorandum of the sale to Fredericks in presence of Fredericks, Newcomer and Graham.   He read it; all heard it and looked at it.

Plaintiff gave other evidence, that the memorandum of sale to Fredericks was read at the criminal trial and that Mulliken was present during the whole trial.

Newcomer testified that Fredericks, who was the father-in-law of Mulliken, negotiated the transfer of the property to him from witness; Fredericks knew all; he acted as Mulliken's agent; Fitler was witness's conveyancer; Mulliken was aware of the trouble about this property.

Plaintiff gave in evidence:—deed Newcomer to J. W. Fredericks (a son of Captain Fredericks) for the Ephrata property, dated July 1st 1864.   Deed W. H. Wilson (a son-in-law of Captain Fredericks) to Newcomer for the Mount Vernon street property, dated July 1st 1864.

Also under objection and exception, the memorandum of the sale by Graham to Fredericks, viz.:

" June 7th 1864.

   C. H. Graham's interest in Ephrata sold to Capt. Fredericks for son for $15,000.
   Payable:

| | | |
|---|---|---|
| Mt. Vernon street house  .  .  . | $8,500 |
| (Mortgage $3000)  .  .  .  . | 3,000 |
| | $5,500 |
| House and lot in New Phila., Ohio  . | 1,500 |
| Bond Penna. Iron Co., Danville, Pa.  . | 500 |
| Cash  .  .  .  .  .  . | 7,500 |
| | $15,000" |

[Mulliken *v.* Graham.]

The plaintiff gave other evidence in corroboration of his testimony and generally in support of his case.

The defendant gave in evidence deed dated November 29th 1866, to himself from Newcomer for the Mount Vernon street house.

Captain Frederick testified, that the sale of Ephrata property was from Newcomer alone, who agreed to take the property mentioned by Graham, if Graham would take from him the Mount Vernon street house and the New Philadelphia property towards payment of what Newcomer owed him: Graham "backed out." Newcomer afterwards told witness to make the deed to him and he would arrange with Graham. Witness denied that the memorandum had been read to him. He negotiated with Newcomer for the sale of the Mount Vernon street house for Mulliken.

Newcomer testified that Graham was to give up all his notes upon receiving the deed for the Mount Vernon street property.

Fitler testified, that he had been instructed to draw the deed to Graham, and Graham afterwards said he had ascertained that the New Philadelphia property was not worth what it had been represented, and he would not take it as agreed, and he was then directed to make the deed to Newcomer. The deed had been prepared for Graham and executed; upon his refusing to surrender the notes it was cancelled.

Mulliken testified, that he never knew that Graham had any interest in the property till he heard it at Fitler's office; "That was, that he had agreed to take it and afterwards refused, and Newcomer told me that was broken off;" witness bought after the trial of Newcomer; he (witness) had not paid anything for the house, nor interest on a judgment that was against it. He did not tell Graham's tenant that he had bought the house: he passed the house and found it empty, and with the services of a locksmith took possession of it.

There was other evidence on both sides.

The following are points of the defendant with their answers:—

1. If Graham got the possession of the property in June 1864, under an agreement to receive it and the New Philadelphia lots on account of the payment of the notes he held against Newcomer, and afterwards refused to receive the New Philadelphia lots, he was bound to restore the Mount Vernon street property (Newcomer's), and cannot avail himself of the possession obtained under such circumstances.

Answer: "If it was part of the agreement that Graham should surrender Newcomer's notes after his getting the Mount Vernon street house, and refused to surrender them, but held on to them, then he could not avail himself of a possession obtained in pursuance of a contract which he refused to perform."

4. In any event, unless the jury believe from the evidence, that notice was given by Graham to Mulliken or some one acting

[Mulliken *v.* Graham.]

for him during the time he, Mulliken, was negotiating for the purchase of the Mount Vernon street property, that Graham claimed to be owner of it, the verdict must be for the defendant.

Answer: "If Mulliken was a bonâ fide purchaser without notice of Graham's alleged title, then he is not affected by Graham's title, and is entitled to a verdict."

5. If Mulliken purchased the property of Newcomer pursuant to an agreement made to take it, subject to the mortgage, and pay Watson's judgment, and paid $270 in cash, and gave his obligation for the balance when he got possession, he is a bonâ fide purchaser, and entitled to as much protection as if he had paid the cash at the time he received the deed.

Answer: "Yes, if he had not actual notice of Graham's title."

6. Unless Mulliken had, before he received the deed and paid the money, and gave his obligation to Newcomer, direct, express and positive notice that Graham claimed to be the owner of the Mount Vernon street house, the verdict must be for the defendant.

Answer: "I affirm this, but add, it is not necessary that he should have had formal notice from Graham, or anybody else, that he was the owner. It is sufficient if he knew of Graham's title. Knowledge is all that is necessary."

9. The mere reading of the memorandum, dated June 7th 1864, in the trial at the Criminal Court, in which Mulliken was not a party and had no interest, and as to which there is no direct, express or positive evidence that he heard it read, is not such evidence as will warrant the jury in finding that Mulliken had notice that Graham claimed title to the property.

Answer: "The reading of the memorandum in the presence of Mulliken, if it was so read in the court-room, may be considered by the jury with the other evidence. It does not appear to me that it ought to be of any great weight alone, but its weight is for the jury."

10. Notice, to affect Mulliken, should have been in the transaction resulting in the purchase by Mulliken.

Answer: "Refused."

11. There is no evidence of notice by Graham to Mulliken in the transaction resulting in the purchase of the property by Mulliken, that Graham owned or claimed to own the property.

Answer: "There is no evidence of express notice given by Graham to Mulliken in the transaction, for it does not appear they had any negotiation upon the subject; but if Mulliken had at the time any *actual* notice from other sources, he is affected by the equity existing between Graham and Newcomer."

The verdict was for the plaintiff with $1000 mesne profits.

The defendant took a writ of error and assigned for error: the admission of the evidence objected to and the answers to defendant's points.

[Mulliken v. Graham.]

*A. Briggs*, for plaintiff in error.—There was no express notice to Mulliken, and mere rumor is not sufficient: Jaques v. Weeks, 7 Watts 261; Kerns v. Swope, 2 Id. 75; Churcher v. Guernsey, 3 Wright 84. Notice to an agent in one transaction, is not notice to his principal in an independent transaction—and à fortiori to another party who employs the same agent upon another occasion: Bracken v. Miller, 4 W. & S. 102; Boggs v. Varner, 6 Id. 469; Hood v. Fahnestock, 1 Barr 470; Warrwick v. Warrwick, 3 Atk. 290–4; Hilliard on Vendors 414, section 12; 2 Sugden on Vendors 537–8. The possession by the tenant was notice only of the interest of the tenant: Souder v. Morrow, 3 Phila. R. 112; s. c. 9 Casey 84.

*P. Archer* and *W. J. Budd* (with whom was *John P. O'Neill*), for defendant in error.—Notice of an equitable interest need not come from the party or his agent, it is sufficient if it be derived *aliunde*: 2 American Notes to White & Tudor's Leading Cases in Equity 158; 1 Story's Eq. Jur., sec. 400 *et seq.*; Ripple v. Ripple, 1 Rawle 386; Butcher v. Stapely, 1 Vern. 364; Woods v. Farmere, 7 Watts 382; Daniels v. Davison, 16 Ves. 249; Simon v. Gibson, 1 Yeates 291. One about buying land is bound by information given him by agent of the vendor; Lewis v. Bradford, 10 Watts 67; Sergeant v. Ingersoll, 7 Barr 340. Possession is notice: Billington v. Welsh, 5 Binney 132; Cresson v. Miller, 2 Watts 275; Sailor v. Hertzog, 4 Wharton 259; Krider v. Lafferty, 1 Id. 303; McCulloch v. Cowher, 5 W. & S. 427; Green v. Drinker, 7 Id. 440. Whatever puts a party on inquiry, amounts to notice: Knouff v. Thompson, 4 Harris 357; Jaques v. Weeks, 7 Watts 267; Epley v. Witherow, Id. 163; Churcher v. Guernsey, 3 Wright 84; Hill v. Epley, 7 Casey 331; Lloyd v. Lynch, 4 Id. 419; Meehan v. Williams, 12 Wright 238; Patton v. Borough of Hollidaysburg, 4 Id. 206; Maule v. Rider, 9 P. F. Smith 167; Butcher v. Yocum, 11 Id. 168.

The opinion of the court was delivered, March 6th 1871, by SHARSWOOD, J.—The learned judge below committed no error in admitting in evidence the memorandum of June 7th 1864, which forms the subject of the first assignment of error. When the plaintiff offered it, he was not called on to state the purpose for which it was introduced. If it was evidence for any purpose it was admissible. It clearly tended to prove the equitable title upon which the plaintiff claimed to recover. It was on its face an account of the sale of his interest in Ephrata to John W. Fredericks, and from it would be gathered that the premises in controversy— the Mount Vernon street house—was received as part of the consideration of that sale. Graham testified that it was drawn up by Williams, his book-keeper, as a memorandum of the contract be-

[Mulliken *v.* Graham.]

tween Fredericks and himself, and after it was written it was read to Newcomer, Fredericks, his brother and himself. Williams, by his testimony, confirmed this statement. It is clear, then, that as independent evidence of the contract, as well as in corroboration of Graham's testimony, the memorandum was admissible without regard to the question whether Mulliken had notice of it. It was not necessary that he should have notice or knowledge of that identical paper to make it evidence. Whether he was a bonâ fide purchaser without notice of Graham's equity was another and distinct question in the cause. The plaintiff had first to establish his equitable title, and then if Mulliken succeeded in showing himself to be a purchaser of the legal title for a valuable consideration paid, it would devolve upon him to give evidence of notice to Mulliken of his equity before he made the purchase or parted with his money or other valuable consideration.

The second assignment of error is to the answer of the learned judge to the first point of the defendant below. Substantially the principle of the point submitted was affirmed, but more accurately in its application to the facts. There was no distinct evidence of an offer and refusal of the New Philadelphia lot. The plaintiff objected on that score, but what he did refuse as to his part of the contract was to surrender Newcomer's notes, and the judge charged upon the point submitted with the correction in the application of the principle to the case in accordance with the point.

The other assignments of error depend upon the solution of a single question, and it is frankly conceded that if there was any evidence in the cause to affect Mulliken with notice, actual or constructive, of Graham's equity, there was no error in the answers or charge of which the plaintiff in error has any right to complain. This question is made to hinge mainly upon another, whether to affect the purchaser there must be actual notice by the holder of the equity, or some one for him, in the transaction which resulted in the purchase, or whether knowledge by the purchaser derived from any reliable source is sufficient. Certainly the vague reports of strangers, or information given by a person not interested, will not have the effect of notice to the purchaser; Kerns *v.* Swope, 2 Watts 75; Jaques *v.* Weeks, 7 Id. 261; Churcher *v.* Guernsey, 3 Wright 86; but information derived through parties interested and from a reliable source is different. Although a purchaser may disregard rumors set afloat by those who have no right to intermeddle, he is bound to attend to the admonitions of a party in interest: Ripple *v.* Ripple, 1 Rawle 390. Thus in Butcher *v.* Yocum, 11 P. F. Smith 168, notice from the grandfather of a minor was held sufficient, and the doctrine approved and applied in that case was, that it is not indispensable to the validity of notice of an equitable interest that it should come from

[Mulliken v. Graham.]

the party or his agent; it is sufficient if it be derived *aliunde;* provided it be of a character likely to gain credit.

Now Newcomer testified that Mulliken was aware of the trouble about this property. Newcomer was prosecuted by Graham for the embezzlement of the cash received by him as his agent in the sale of Ephrata, and part of the consideration of that sale was the conveyance of the Mount Vernon street house to Graham. Mulliken was a witness at that trial. He was at the trial, said Newcomer, during the whole of it. Of course the matter of the contract was the subject of controversy. The memorandum of June 7th 1864, was read in evidence at that trial. Here was some evidence that Mulliken knew, and that from a reliable source, that it was a part of the alleged contract that Graham was to have the property in question. But that is not all. Mulliken applied to Fitler to attend to the conveyancing on his behalf. Fitler knew all about it, and told Mulliken, for he himself testifies: "I never knew that Charles Graham had any interest in it till I heard it at Fitler's office. That was, that he had agreed to take it and afterwards refused, and Newcomer told me that was broken off." But when informed by Mr. Fitler that there had been such a contract, was it prudent to rest satisfied with Newcomer's declaration that it had been broken off? There was certainly enough in all this to have induced a careful man to inquire of Graham whether he had any claim or title before making the purchase. We think, therefore, that there was evidence in the case which justified the learned judge below in submitting the question of notice to Mulliken for the determination of the jury. This renders it unnecessary to consider how far the possession by Graham's tenant operated to put Mulliken upon inquiry, so as at least to compel him to show that he had made application to the tenant on the ground to ascertain under whom and by what title he was in possession. No point as to this appears to have been made below, nor is it within any one of the assignments of error.

Judgment affirmed.